Good morning, Your Honor. The appeal before you today is, since it was summarily taken from the plaintiff, by Justice Reallo. To start, I direct the Court to the five portions of the excerpts of record, specifically 25, 27, 168, 9, and 188. During the hearing of June 13th, 2005, Judge Reallo misstated the facts, and the parties, stating it was a plaintiff who was making a usurious claim right on the defendant. As a matter of fact, he chastised the plaintiff when it was directed to the record. The comment was, I've read the record. Go on. During the same hearing, it was brought to the Court's attention that the defendants were failing to cooperate and participate in Federal Rule Civil Procedure 26F. Judge Reallo indicated that I'd encourage the attorneys to follow the rules, but made the specific point of saying that's not in order. During the hearing of September 6th, 2005, while plaintiff's counsel traveled 3,000 miles to be present at calendar call, and defendant's counsel was 10 minutes away, they didn't appear. One hour later, Judge Reallo asked, is there anything further? When I tried to indicate the items in the briefs, he said, that's all in your papers, sat down without clarification. Finally, the Court will look at excerpt of record 188, and that's the docket statement 60. I find it very interesting and questionable why the clerk determined to place a note in the record docket that the plaintiff and the defendant's counsel appeared an hour and 15 minutes late and said it was miscalendared. However, the judge did not decide to have a basis for an opinion. As to the plaintiff's complaint, it's a 20-page complaint with 121 paragraphs and 25 exhibits, representing four distinct causes of action. That's set forth in the record at 43 through 48. At the time the complaint was served, discovery was conducted, depositions were taken, and the evidentiary basis of sanctioning the complaint was set forth and forward. The standard in Connolly v. Gibson, which is set in the papers, says the nature of a complaint has to place the defendant's unnoticeable claims. Not only ---- Roberts. Might I jump ahead on your claim? You may. In your claim for interference with prospective business advantage, do I understand correctly that you're essentially arguing that a one of the members of the corporation interfered with the corporate contract? Is that the gravamen of your complaint? Well, it was an LLC rather than a corporation. Right. Yes. There were two aspects ---- When I say corporation from now on, I'm just talking about the LLC. If you don't ---- I understand the difference. The two aspects of that particular claim for interference with prospective advantage, in January of 2002, the appellee signed a document which was protecting the rights to the soundtrack. Within months later, he, without authorization, sold the rights to the contract, number one. Number two, the appellee actually ---- It was the ---- who was the third party? Where's the third party in that? Alpine Records. Okay. And you allege that the LLP had the ---- had a contract with Alpine Records? Well, the ---- as a matter of fact, Mr. Pearlstein, who signed that and the ---- and that set forth in the excerpt of the record, if I may, Your Honors, I believe it's about 80, 82 or so of the excerpts. Right. But the contract is between the LLC and Alpine, correct? Well, the contract was ---- Or the prospective. The contract was with Pitmobile Entertainment, which had the soundtrack. And the LLC could not sell the contract, sell the music, which they did a blockbuster. So as far as the interference with the relations, that's one. When the ---- the moment that they sold, that the appellee sold the rights, he interfered with the appellant's rights to ---- for the music. And the court of Texas, although they said there was no personal jurisdiction made a fining as to that, that that was improper. And that was a ---- the federal court in the Eastern District, Tessex, also set forth in the excerpts of records. But additionally to the interference with prospective ---- I'm just structurally trying to figure out what happened, because it ---- let me cut to the chase here, is that generally speaking, in an interference with prospective business advantage, you have to have an independent contract that's or at least you have a third-party action. Generally, for example, you can't say, well, I'm a member of a corporation. The corporation had a third party, you interfere with the corporate rights, because there's no third party involved. It appears to me that here you're arguing that a corporate officer can be, or a corporate member, can interfere with someone else's member's right and give rise to the tort. You cite in your brief, because I didn't bring it here, but a case that doesn't really say that. So what's your best case that, in California, that says that this is an allowable theory? Well, Your Honor, if you can look at ---- I'm talking about Wood, I think, versus Fox. Isn't that the case you relied on? We did cite that, Your Honor. Now, that was a case in the shareholder interfered with a corporate officer's contract. That's a pretty clear case. That doesn't seem to be this kind of case. So what's your best case? Well, if you look at the best case we cited, which is Jones v. F.H.A. Hampson, which specifically says, as to the LLC, and we're ---- I guess right now we're focusing on the interference perspective that he's playing. If Mr. Perlstein took upon himself and acted the LLC as an alter ego, he would not be bound by the requirements of a shareholder derivative action or on the Beverly Calais Act and the Corporation's Code. So Perlstein, on his own, as alleged in the briefs and in the initial pleadings, we have stated that he felt he was above the law. He, whatever he ---- I understand your fiduciary claims, but I'm not quite sure I follow the claim for interference with the perspective business advantage. Well, as ---- As if it's in a traditional tort sense. Okay. As a ---- to the interference with perspective advantage, we've set forth, and I'll summarize this up, given the time that I've been allocated, we'll summarize that as a contention to contention, number one, Perlstein acted outside of his fiduciary duties or action out of his responsibilities under the LLC and had this agreement with Alpine, which he was bound not to sell the music rights, and he did that. By his doing that, he interfered with Mealy's rights who owned the music, number one. Number two is that when he went out and marketed the video, the DVD, and didn't pay Mealy anything, that was interference with Mealy's perspective advantages. And what was the independent wrongful act? The independent wrongful act were violations of the California Corporations Code, and I've itemized that, if I may. California Corporations Code 15.510, 16.404, and 17,000, et cetera, which sets forth the various different duties that they have. Your Honor, if I may, reserve time. Counsel, I have a question for you. Yes, Your Honor. The claim that was of most interest to me was the breach of fiduciary duty claim. And I think, you know, there's a notice pleading standard, and I read the complaint to assert a breach of duty, and on a 12B6 dismissal, I think we looked to whether you could prove any set of facts to support it. So what are the facts that would be proven that you think show a breach of fiduciary duty? If movie and soundtrack rights were sold, why is that a breach of fiduciary duty? Your client gets shut out by it because the price was low. Could they have been sold for a higher price? Your Honor, if I can direct the Court's attention to numerous portions of the record, and I'll just list those as it pertains to that particular question. It would be 60, which is the establishment of the duty, extra for record 59, the directive of a third-party disbursement, ER 81, which is the preclusion of transfer rights, 107, 5, 6, ER 59, which is the requirement of majority vote, ER 120, which the appellee's con the appellee conclusively stated that he gave no authorization for the transfer, ER 117 and 124, where the appellee acknowledged that there were 18 pages of contracts not disclosed to the appellant, ER 122, which was the secret mutual understanding, and ER 97, 100, 126, and 136, whereby there was a payment to a non-party to the contract which was owned by the appellant, appellee. I have a question on your usury claim. Yes. In parts of your complaint, you alleged that Pearlstein was an investor, that this was an investment. So how can you make, if it was an investment, how could it be a loan and subject to the laws of usury? Well, if you look, once again, Your Honor, I'm going to direct the Court to certain portions of the record, which record the law. I think the court was asking a question of law. Oh, a question of law. If it's an investment, how can it be subject to usury provisions which pertain to loans? Because it wasn't – it was a loan, and that's what everything – So when you alleged it was an investment, what were you meaning? What was that? I think when you were alleging that it was an investment, what did you mean? This wasn't an – well. Your paragraph 3 says, This is a complaint for damages based on facts and circumstances arising out of an investment. That's correct, Your Honor. So I don't understand how – and usury laws don't apply to investments. So I don't understand your argument that it's a loan and that usury laws apply to it. The way that it was documented in every paperwork, even including the testimony from the appellee, specifically says it's loans, it's interest notes payable, and he says, I gave 100 percent, I would accept 100 percent interest, and that, if I just may, direct the Court's attention to the portions of the record, which is ER 68. Are you referring to the accounting documents that Pearlstein maintained where he – where he maintained it as a loan on his records? Where, according to those accounting documents and Pearlstein's own statements in his deposition, set forth at 120. So you wrote your complaint characterizing it as an investment, and later on it came out that it was being treated as a loan? Is that your argument? Well, that was through discovery. We found that information out, Your Honor. Okay. It looks as my – my time is over. I'm going to expire, but we'll give you a couple minutes for rebuttal. Thank you, Your Honor. Mr. Abbott. Thank you, and good morning, Your Honors. I don't have anything to add to what's contained in the moving papers, Your Honor. I think the Court's questions highlight the reason why the result of the trial court should be affirmed. Well, it's hard to see how the breach of fiduciary duty claim doesn't survive a 12b-6. Do you want to explain that? Well, I don't think the – I think the complaint is bereft of facts that allege exactly what that duty was. Why does it make a difference? Notice pleading. Well, Your Honor, the defendant is entitled to such notice that would enable him to, in fact, defend the complaint. It doesn't – it doesn't set forth any series of facts, in our view, that give him that notice, that indicate what the duty is, what the duty Pearlstein owed to this plaintiff, and, in fact, what breach, in fact, was committed. We think the – Well, I don't think Pearlstein would – Pearlstein would owe a duty to treat the assets fairly for anyone who had an interest in it, surely, and, I mean, for all we know, when Pearlstein sold the movie and soundtrack rights at the price he sold it at, you know, maybe the plaintiff could prove they should have been sold for much more so he would get something out of this. You know, it's just a notice pleading standard. So I don't see that a complaint has to prove the facts. If you move for summary judgment and you submitted affidavits justifying what Mr. There might or might not be an issue of fact, but on a motion to dismiss under 12b-6, I think we just take the complaint as – as it stands and ask if any facts could support it. The Court's point is a good one, but I didn't think this complaint rose even to that level where it indicated that Pearlstein failed to exercise due care when he sold the property and that, in fact, the property could have been sold for money that would have, in fact, engendered some profit or some extra funds to compensate the plaintiff. Do you want to rest on that? Yes, Your Honor. Okay. We'll give you a minute for rebuttal. Thank you, Your Honors. Being guided by the Court's questions, and again to the evidence fiduciary, we set forth the items in the record which also identify that. One thing I would like to also add is ER-59, where it specifically states if any funds are to be disbursed, it's to be disbursed by a third-party accountant. Also notifying to the attention of the appellee's brief at page 6, they indicated that the $119,000 payment to Danco, which was not part of it, was a mere gaffe. I think this is a lot more than a gaffe. I think the justices have looked at this complaint, have realized that it was improperly dismissed. We ask for a reverse and a remand and have this matter moved forward to a trial by its peers. Thank you, counsel. Thank you, Your Honors. The matter just heard will be submitted. We'll proceed to the argument on the next case, which is Zeroud v. Honda Trading.
judges: Thomas, Wardlaw, Gould